Loomis and others *vs.* Brown and others.

In an action upon an undertaking entered into on granting an injunction, it is a sufficient statement of the nature of the suit, the manner of its commencement, place of trial, jurisdiction of the court, &c. to say that an injunction was granted in the suit, by a justice of the court, and that issues were joined in the suit and a judgment rendered therein.

After a party has obtained an injunction, and stayed his adversary's proceedings, who has suffered damages thereby, it is too late for such party to set up as a defense to a suit on the injunction bond, a want of jurisdiction in the court to grant the injunction. He is *estopped* from raising that question.

An allegation in the complaint in such an action, that the injunction was served on the defendants, personally, is sufficient, without specifying the manner of service.

Such an averment means a service that is legal, and sufficient in law. The dismissal of a bill on the final hearing of the cause includes, by force of the term itself, and of the law applicable to it, a determination that the plaintiff was not equitably entitled to a preliminary injunction, issued on the commencement of the suit.

The 117th section of the code, which declares that "all persons having an interest in the *subject of the action*, and in obtaining *the relief* demanded, may be *joined as plaintiffs*," is now the rule, as to parties, in all cases; whether such as were formerly the subjects of suits in equity or of actions at law.

Thus where an action is brought upon an injunction bond, the *subject* of the action being the *damage* sustained by the plaintiffs in consequence of the injunction, which prevented them from proceeding in their business, all the obligees may join as plaintiffs, notwithstanding the claim of one of them is different, in its character and amount, from that of the others.

Appeal by the defendants, from a judgment rendered at special term, on demurrer to the complaint. The complaint alleged that on the 7th day of February, 1851, the appellants, Brown, Lord & Smith, together with other persons, as plaintiffs, obtained an injunction in this court restraining the above named respondents, Loomis, Kirby and Gunn, " from passing or floating, or in any way causing or procuring to be passed or floated, any logs over the dam of the plaintiffs at Brownville." That this injunction was served on said Loomis, Kirby and Gunn, April 18th, 1851. That on the 6th day of February, 1851, the defendants Brown and others executed an undertaking, running to the plaintiffs Loomis, Kirby and Gunn, to the effect

that the plaintiffs in that action should pay to said Loomis, Kirby and Gunn, " such damages not exceeding $2,500 as they might sustain by reason of the injunction, if the court should finally decide that the plaintiffs were not entitled thereto." That Kirby and Loomis were extensively engaged in cutting logs into lumber at Dexter, below said dam, which they obtained in Wilna above the dam, and transported them by floating them down the Black river.   That Loomis and Kirby had contracted with Gunn to cut a large quantity of logs in Wilna and deliver them in the boom at Dexter, and Gunn was engaged for said Loomis and Kirby in cutting said logs and putting them into the river to be floated to Dexter.   That by reason of the injunction, the said Loomis, Kirby and Gunn were prevented from prosecuting their business, whereby they sustained damages.   That such proceedings were had in that suit that, on the 22d day of November, 1851, an order was duly made by the court dismissing the complaint ; and that on the 8th day of December, 1851, a judgment roll was duly signed and filed, and the judgment duly docketed, by which the court did finally decide that the plaintiffs in that action were not entitled to the said injunction.   And that at a special term of this court, held on the 3d Monday of February, in the year one thousand eight hundred and fifty-two, the said court did duly order and direct, in pursuance of the statute, that the damages sustained by the plaintiffs in this action by reason of the said injunction, should be ascertained by action upon the said undertaking.   Therefore, the plaintiffs demanded judgment against the defendants.

The defendants, Brown, W. Lord, and G. Lord, demurred to the complaint, and assigned the following grounds and causes of demurrer :   " *First.* The nature of the action commenced in which the injunction is alleged to have been granted, is not stated, or the manner of its commencement, or the place of trial therein ; nor is it shown that the court had jurisdiction thereof, and the persons of the defendants therein, or that the justice had jurisdiction to grant the injunction.   *Second.* The manner of serving the injunction is not stated, so as to show that the parties were bound by it, or were obliged to obey it.   If it was

Loomis *v.* Brown.

not regularly served, together with a copy of the papers on which it was obtained, it was not binding upon them. It is not shown, therefore, that the plaintiffs could have sustained any damages by it. *Third.* The description of the judgment of the court in the action mentioned in the complaint is insufficient. No legal judgment is described, or any thing to show that it was a legal and valid judgment. Nor is the character or nature of the judgment stated. And the averment that the court finally decided that the plaintiffs therein were not entitled to the injunction, is insufficient, without giving the nature and description of the judgment to sustain the allegation. The allegation is a conclusion of law merely, in the absence of the record and its character. The allegation itself does not show that the court decided that the plaintiffs therein were not entitled to the preliminary injunction. This is also a mere conclusion of law, and not the averment of a fact appearing of record. *Fourth.* The plaintiffs are improperly joined as parties; they show no joint interest or right of action, but the contrary. The claim of Loomis and Kirby is distinct in its character, and different in amount from that of Gunn. That of Loomis and Kirby is based on a loss of, and damage to logs, and the stoppage of their work at the saw mills. That of Gunn would seem to be for being deprived of a part of his pay for getting the logs to the mill, either wholly or for a term of time, though it does not appear but that he finally delivered, or might have delivered, all the logs, so that his damages, if any, would be merely nominal or very slight; so that if Green has sustained any damages whatever, the ground, nature, and amount is different and distinct from those of the other plaintiffs. There are two causes of action joined, which are incompatible, requiring different assessments, judgments, and executions. *Fifth.* The undertaking is to pay the damages which the defendants in that suit, the plaintiffs here, should sustain. This is joint and not several; a joint action will not lie on the undertaking. *Sixth.* The complaint does not state facts sufficient to constitute a cause of action; nor in favor of the plaintiffs jointly against the defendants."

The issues of law thus joined, were argued before Justice PRATT, at a special term held in the county of Jefferson, in December, 1852, who, upon deciding the same, delivered the following opinion:

PRATT, J. The covenants upon which this action is brought are in form made to the plaintiffs jointly. At common law, in such cases, the action might be brought in the joint names of all the covenantees although their interests were several. But it was not necessary to join them. (*Platt on Covenants,* 130.) The action might be joint or several at the option of the covenantees. Although the damages sustained by the covenantees in this case are not joint, yet there will evidently be a common point of litigation in which they all will have a common interest. In such case it would be proper even in a court of equity to join the parties in one action.

But I apprehend the sufficiency of pleadings in this respect is now to be determined by the code, and that but little light can be obtained from the former rules of pleading. By that, all persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs. The *subject* of the action in this case is I think substantially the same in respect to all the plaintiffs, and the evidence to prove the injury will be substantially the same. The parties were differently affected by the injury, but the facts and circumstances which produced or occasioned the damages are substantially the same. It seems to me therefore clear, that here is substantially one cause of action which affects all the plaintiffs, although in a different degree, and that they are therefore properly joined. The code contemplates the joinder of parties who may be differently affected by the injury complained of and who have very different and distinct interests as between each other. Section 274 provides that judgment may be given for or against one or more of several defendants, and for or against one or more of several plaintiffs, and it may determine the ultimate rights of the parties on each side, as between themselves. It is plain by this provision that the statute con-

Loomis *v.* Brown.

templates the joinder of parties whose interests are not identical; otherwise no such provision is necessary.

Again; it is exceedingly doubtful whether a demurrer is allowed by the code for an excess or misjoinder of parties. It has been held that a misjoinder of defendants is no ground of demurrer. I do not see why the same rule will not apply to the plaintiffs. The demurrer is allowed for a defect of parties, which probably means a deficiency and not an excess of parties. The provision that judgment may be rendered in favor of one or more of the plaintiffs or defendants, and against others, would remedy the latter difficulty. It is true the misjoinder of causes of action is a ground of demurrer, but as I have before attempted to show, the cause or gist of the action in this case is single, and the form of the covenant is clearly single. I do not think it was necessary to describe particularly the nature of the action. The injunction was as deleterious to the plaintiffs in one case as another, nor was it necessary to set out the facts showing that the court had jurisdiction. The supreme court has general jurisdiction and its jurisdiction is presumed. Nor was it necessary to state specifically the manner of service of the injunction; but it is sufficient to allege service in a general form

So in regard to the allegation of the recovery by the defendants in that suit, I think the complaint is sufficiently explicit, There must be judgment for the plaintiffs upon the issues of law, with leave to the defendants to answer on the usual terms.

The appeal was argued by.

*F. F. Starbuck*, for the plaintiffs.

*John Clarke*, for the defendants.

*By the Court*, GRIDLEY, J. The justice before whom the demurrer in this cause was argued held the complaint good, and overruled the demurrer. This is an appeal from his decision. The first three causes of demurrer have not been much dwelt

Loomis *v.* Brown.

upon. In fact there is no ground for the objections raised in those points.

I. The complaint sets forth the nature of the suit, so far as to say that an injunction was granted in it by a justice of this court; and it states that it was not only commenced but that issues were joined in it and a judgment rendered therein. This is a sufficient statement. If it were not, it is the better opinion that after the parties have obtained an injunction and stayed their adversaries' proceedings, who have suffered damages thereby, it is too late for the plaintiffs in the first suit to set up as a defense to the suit on the injunction bond, a want of juris-diction to grant the injunction. They are estopped from raising that question.

II. The complaint alleges a service of the injunction; which, under the liberal rule prescribed for the interpretation of plead-ings under the code, means a service that is legal, and sufficient in law.

III. It has been held that a dismissal of the bill on the final hearing of the cause includes, by force of the term itself, and of the law applicable to it, a determination that the party was not equitably entitled to the injunction.

IV. But the fourth ground of demurrer is the one on which the defendant principally relies. This is based on an erroneous joinder of plaintiffs, on the ground that the claims are distinct and separate, arising out of the separate nature of their inter-ests. The covenant is *joint*, and when that is so, it is said that the covenantees may sue jointly. (*People* v. *Holmes*, 5 *Wend.* 197. 10 *B. Monroe*, 372. *Platt on Covenants*, 130.) How-ever that may be, we are now to determine this question, as it arises under the code of procedure, which abolished all distinc-tions between the forms of proceeding in actions at law and suits in equity. With the view of embracing all cases, whether of law or equity, and of making them conform to one general rule, the code provides, in the 117th section, that "all persons having an interest in the *subject of the action*, and *in obtaining the relief demanded, may be joined as plaintiffs*, except as other-wise provided in this title." This is now the rule in all cases,

Loomis *v.* Brown.

whether such as were formerly the subjects of suits in equity or of actions at law; and we are to administer it according to its spirit and true intent, however the practice may differ from the rule that heretofore has prevailed in actions at law. It is only necessary to advert to the fact that the rule prescribed by the code is applicable to *all* suits, and then consider the identity of the rule the code has adopted for the joinder of plaintiffs, with the rule as it prevailed in equity, to be convinced that we are now to hold the same rule applicable to both. In *Mitford's Pleading* it is said to be the constant aim of equity to do complete justice by settling the rights of *all persons interested in the subject of the suit.* For this purpose all persons materially interested in the subject ought generally to be made parties, &c. This rule, however, the learned writer proceeds to say, admits of many qualifications. (*Mitf. Pl. by Edwards, 3d Am. ed. p.* 164.) Among these qualifications the author cites the case of creditors suing (on behalf of themselves and others) the representatives of a deceased debtor, for an account and application of assets real and personal. (2 *Ves.* 313.) In our own court of chancery it has been held that several judgment creditors, having different and separate judgments, may join to set aside a fraudulent assignment, by which the property, real and personal, of a fraudulent debtor has been transferred, a part to one creditor and a part to others. (*See Brown* v. *Ricketts,* 2 *John. Ch. Rep.* 283; *Brinkerhoff* v. *Brown,* 6 *Id.* 139; *Fellows* v. *Fellows,* 4 *Cowen,* 682; *Fish* v. *Howland,* 1 *Paige,* 20; *Egberts* v. *Wood,* 3 *Id.* 517.) The cases of *Fellows* v. *Fellows* and *Brinkerhoff* v. *Brown,* are pertinent to show that the *subject matter is identical* in this case, with the point of litigation in those cases. The *subject* in those cases was the *property of the debtors* fraudulently conveyed to other defendants; and it was held to make no difference that the *title* of the several plaintiffs to their proportions was separate and distinct; and that the amounts to which they were respectively entitled, were also distinct and different; and that the amounts which the defendants would be respectively decreed to contribute would be different, depending on the value of the portions of the property of the debtor, each

had fraudulently received. So here the *subject* of the action is the *damage* of the plaintiffs arising out of the injunction, which prevented them from proceeding in their business of floating logs upon the Black river to the mills in Dexter. This damage the defendants *all* concurred in producing, and *all agreed jointly* to pay. And it matters not that the damages of the defendant Gunn were different from those of Loomis and Kirby. They may be joined, with the same propriety and on the same princi- ple, that two judgment creditors, having judgments of different dates and amounts may join in an action against the debtor and his fraudulent assignees. In fact there is an additional reason for the present plaintiffs joining ; and that is, the *covenant to them jointly.* This doctrine is reiterated, and the principle reasserted, in the first of *Barbour's Ch. Reports.* The chan- cellor there lays down the general rule as to the joinder of parties, and then states the exceptions, citing the case of *Brink- erhoff* v. *Brown,* (6 *John. Ch. Rep.* 139,) and several English cases. (1 *Barb. Ch. Rep.* 62.) It will be perceived that this case falls within the precise words of the section of the code, before cited. All have an *interest* in the " subject of the action and the relief demanded," that is, in the damages arising out of the operation of the injunction. It is not said to be a *joint* or an *equal* or even a *common interest,* but simply an *interest* in the *subject* of the action, with the view of doing full justice and settling the rights of all parties in interest, in *one suit.*

It has recently been decided in a *court of law* in England, that, under a statute which makes railroads responsible for the damages sustained by the widow and children of a deceased hus- band and father, killed by the negligence of the corporation or its agents, a suit lies, by the several parties entitled under the act, *jointly ;* and a verdict was rendered in the suit separately, for the widow and the children. This was a case *at law,* and I cite it to show that the legislature can by implication exercise a control over the proceedings in a court of justice, and that it reg- ulates even the verdict, in a way wholly foreign to the well known rules applicable to ordinary proceedings of juries, and their verdicts.

We think it was the manifest intent of the legislature to make a change in relation to parties in suits at law, and to assimilate the practice in that respect to the practice that had before then prevailed in courts of equity; and we therefore affirm the decision of the justice at special term.

[JEFFERSON GENERAL TERM, July 4, 1853. *Gridley, W. F. Allen, Hubbard* and *Pratt,* Justices.]