MOSES E. NESBIT, MARGARET HALEY, CALEDONIA HALEY, L. A. O. HALEY, KIEZIAH HILL, FRANK HILL AND GEORGE HILL *v.* ELIZA J. RODEWALD AND HENRY RODEWAD.

1. APPEALS FROM CHANCERY.—Appeals from Chancery in this State have always been regulated by statute. Ordinarily they should be applied for to, and granted by, the court whose proceedings are sought to be reviewed.

2. AUTHORITY TO GRANT APPEALS.—From all such interlocutory orders as effect the title to, or the possession of property, or direct the payment of money, or the like, an appeal may be granted by the court in term time, or by the judge in vacation, if applied for within twenty days after the rendition of the decree or order complained of ; and the court or judge shall determine whether such appeal shall or shall not operate as a *supersedeas.* Rev. Code 555, art. 102. But the clerk of the court has no power to allow appeals or writs of error in chancery, in any case. His functions are limited to the entering of appeals, approving bonds, issuing summons, etc.

3. APPEAL AS A MATTER OF RIGHT.—Art. 101, Rev. Code, 555, provides that an appeal, suspensive in its operation, may be taken from any order of the court overruling a demurrer to a bill, and may be allowed before the defendant shall be required to answer. The chancellor has no discretion to grant or disallow the appeal. The party is entitled to it as a matter of right.

4. LEAVE TO FILE SUPPLEMENTAL BILL.—An order, granting leave to file a supplemental bill, is not such an order as may be appealed from. If error can be predicated of it, at all, it can only be when the case shall be brought to this court upon final decree, when the whole case is open for review.

Appeal from the chancery court of Yazoo county. SHACK-LEFORD, J.

The appellants filed the following assignment of errors:

1st. The court below erred in granting leave to file the supplemental bill.

2d. The court below erred in overruling the appellant's demurrer to the supplemental bill.

*Harris & Withers*, for the appellant.

The appeal comes to us indirectly from the civil law, but directly from the English law. The term "petition of appeal," in art. 103, Rev. Code, is borrowed from the proceeding on appeal in the English court of chancery. In England the appeal was a matter of *right* as to all orders or decrees, whether interlocutory or final. 2 Daniel's Chancery Prac., 1558–1571. In this state we adopted the appeal, but placed the appeal from interlocutory orders or decrees on a different footing. An appeal from a final decree in chancery might be entered in the chancery court at the time it was pronounced, or within one month after the decree, by lodging with the clerk of the supreme court, a copy of the pleadings in the suit, and a petition suggesting errors, with a bond, etc., to be approved by one of the judges of the supreme court, or within three years, by a "petition of appeal," to the supreme court or a judge thereof in vacation.

From a certain class of interlocutory decrees, the same as are enumerated in art. 102, Rev. Code, 555, an appeal might be granted by the court or chancellor in vacation, at any time before final decree. Acts of 1822, Hutch. Code, p. 758–9; see Russel v. Stephens & Niles, 13 S. & M., 307. In

1844, Hutch. Code, p. 781, the legislature made the appeal from the overruling of a demurrer a matter of right in all cases.    Brown v. Troup, 33 Miss., 35 ; ib., 163.    On demurrer overruled, the party must appeal or answer, or otherwise, a *pro confesso* is taken, and a final decree follows.    The over- ruling of a demurrer is regulated by a distinct provision, and is separately dealt with in this Code as in the old law.

The counsel for the motion based it upon two propositions, neither of which can be maintained :    1st. That appeals from decrees overruling a demurrer are governed by art. 102, Rev. Code, 555 ; 2d. That appeals, where not lawfully authorized to be granted by the clerk, can only be granted by the court in term time.    The appeal from overruling a demurrer is dis- posed of by arts. 101–104.    If the design was to subject it to the provisions of art. 102, it would have been embraced in it by enumeration.    It is not so enumerated or mentioned, and it does not depend on the opinion of the judge.    The right to the appeal is conferred by a different article—101, and the only condition annexed to it is a bond to be approved by the clerk (for $500), by art. 104.    It will be observed, moreover, that in the class of cases enumerated, " the judge shall determine whether such appeal shall operate as a *supersedeas*."    Take the cases of the appointment of a receiver or the dissolution of an injunction and the payment of money into court, the question whether these orders shall be suspended or not, depends not on the giving of a bond, but upon the decision of the judge.    There is no *supersedeas* required in the case of an appeal from an order overruling a demurrer.

Art. 104 preserves the distinction, and mentions the appeal from the overruling of a demurrer as a thing distinct from that class of interlocutory orders where the judge determines the question whether there shall be a *supersedeas*.    The object of section 104 is to fix the amount of the bond in cases where no *supersedeas* issues ; and it divides these cases into three classes :    1st. Appeals from orders overruling demurrers ; 2d. Those cases of interlocutory decrees enumer-

ated in art. 101, in which the judge is to decide whether there shall be a *supersedeas*, and in which he decides that the party shall not have a *supersedeas;* and 3d. Final decrees where the party does not desire a *supersedeas*. It is manifest that the distinction between the overruling of demurrers, and the class of interlocutory decrees described in art. 102 is kept up—the former being mentioned as a class of cases in which no *supersedeas* is required, because such appeals are made suspensive by art. 101, independent of the judge, and without a *supersedeas* bond. It is not possible for delay in entering the appeal on the order requiring an answer to interfere with the progress of the cause. The defendant must answer or submit to a decree by default.

The second proposition is, that the appeal in the case in hand, was granted by the clerk, who has no power to grant appeals, except from final decrees, under art. 103, and it is assumed that the court which rendered the decree can alone grant an appeal. The answer to this is, that the clerk has no power to grant an appeal in any case, and that the only cases in which a judicial award of an appeal is made indispensable are those enumerated in art. 102.

The court will notice a distinction between the writ of error and an appeal from the chancery court. In the former case, art. 9, 563, the language is, "*may petition the clerk for the issuance* of a writ of error," or any judge of the high court of errors and appeals. The language of the Code, art. 103, p. 555, is, "on *filing* his petition of appeal *with the clerk.*" It is just the equivalent of the language used in the old law as to petitions of appeal—" shall lodge with the clerk," etc. Hutch Code, 759, § 345.

There is nothing in the article, or elsewhere in the Code, which countenances the idea that the petition is to be addressed to the clerk. He is not petitioned, and does not grant an appeal. His functions are limited to filing the petition, approving the bond, and issuing the summons. His approval of bonds extends to all cases of appeal, and the bond is the only condition annexed to the appeal in this case.

Under our law, in cases where the appeal is matter of right, on giving a bond for costs, the whole purpose of a petition of appeal is to show that it is the act of the party. The Code has made the act of the inferior court, or of the judge, *essential* in perfecting an appeal in the class of cases only embraced in art. 102, to which this case does not belong. In addition to this, it is plainly to be inferred from art. 108, Rev. Code, 556, that in the view of the legislature there were other methods of obtaining appeals from both interlocutory and final decrees, and this article puts final decrees and decrees overruling demurrers on the same footing. It is plain the article does not refer to the cases mentioned in article 102, because that gives the court power in term time to grant appeals in that class of cases, consequently the article (108) had reference to, and was intended to embrace the case of demurrers overruled and final decrees only.

*Hudson & Nye*, for the appellees.

To warrant the filing of a supplemental bill, it must be shown to the court either: 1st. That they first came to his knowledge in such manner that he could not avail himself of them until after the time when he might have had leave to amend; or, 2d. That he had been prevented by inadvertence, misapprehension, etc., from availing himself of them at an earlier stage of the cause. 3 Dan. Ch. Pr., 1654, note 2; 1 Paige, 168–210; Walker v. Gilbert, 7 S. & M., 456; 1 Hoff. Ch. Pr., 392; Story's Eq. Pl., § 337. The matters embraced in the supplemental bill did not arise after the filing of the original cross-bill, as shown by the supplemental bill and by appellants' cross-bill, and appellees' answer thereto. The appellees might, upon the filing the answer of Nesbit to their original bill, have introduced this matter by way of amendment.

The supplemental bill does not show that the facts stated therein were not known to them, or did not come to their knowledge in a way to enable them to avail themselves of them by way of amendment, or that they were prevented from so doing. Story's Eq. Pl., § 337, note 2; 1 Hoff. Ch. Pr.,

399. Leave of the court must be first had. Pedrick v. White, 1 Metcalf, 75–79. It ought to be filed immediately on the discovery of the new matter. 3. Dan. Ch. Pr., 1656, note 1; Mit. Pl., 74, n. 1; Story's Eq. Pl., § 333, n. 5. See, also, 2 Bar. Ch. Pr., 395, n. 1; Mit. Pl., 75, n. 1. Whenever the same end can be attained by amendment, a supplemental bill will not be allowed. Mit. Pl., 62; 3 Dan. Ch. Pr., 1675. As to the frauds and breaches of covenant alleged by Nesbit, see 4 Kent's Com., 471; Rawle on Cov., 42–132, 133, 334. The original of exhibit A not having been established by sufficient proof, the deed from Holterhoff confirming it, is of no effect. McGwire v. McRaven, 9 S. & M., 34. See Story's Eq. Pl., § 337, and n. 2; 1 Hoff. Ch. Pr., 399, part 3.

*A. H. Harlow & J. M. Dyer*, on same side.

The appellees, on the 16th day of June, 1869, by leave of the chancery court of Yazoo county, filed a supplemental bill in this case. On the same day, Nesbit filed a demurrer to the supplemental bill, and on the day following the court overruled it and ordered the defendant to answer within sixty days. No appeal was applied for, either to the court or to the judge in vacation, but, on the 30th day of August, 1869, two months and a half after said demurrer was overruled, a petition was filed by defendants in the court below, addressed to the clerk, praying an appeal to the high court of errors and appeals. This petition was filed after the time within which the defendant, by order of the court, was required to answer; and the clerk granted the appeal without the fiat of the chancellor.

The appeal should be dismissed, because the clerk had no authority whatever to grant it. It is expressly provided by the Rev. Code, art. 102, p. 555, that appeals from interlocutory orders of the chancery court shall be granted by *the court*, or by the judge in vacation, within twenty days from the date of the order. The clerk, under this statute, had no authority to grant the appeal in this case. The judge himself could not have granted it at the time when it was prayed for. His

authority is limited to twenty days from the interlocutory order, which time had long elapsed before the application was made to the clerk.

SIMRALL, J.:

This cause was submitted on motion of appellees to dismiss.

1st. Because the appeal is from an interlocutory decree of the chancery court, and was not granted by the judge or court; and

2d. Because the appeal was granted by the clerk.

The appellees on the 16th June, A. D. 1869, filed a supplemental bill against Nesbit and others by the leave of the court. On the same day the appellant, Nesbit, had filed a demurrer to the supplemental bill. On the 17th of the same month, the court overruled the demurrer with leave to Nesbit to answer within sixty days. On the 30th of August of same year, Nesbit applied by petition to the clerk of the court for an appeal, suggesting that the chancellor had committed error in permitting the complainants to file a supplemental bill against their ·objection, and also in overruling their demurrer to the bill. The clerk of the chancery court granted the appeal, took bond, etc.

The practice in England has been in theory, at least, to allow an unrestricted right of appeal from any judgment, decree, or order of the court of chancery. The right was formerly as broad in New York, yet there is a large, a very large, class of orders, resting in the discretion of the chancellor, to grant or not. It would seem to be strange, to refer a discretion vested in one court, to the review and correction of another; and therefore, the effort was made in England, and in the appellate court of New York, to except out of this right of appeal and review, such interlocutory orders as this, indeed all which lie in discretion. The difficulty of laying down any general rule, and the embarrassments to the courts for want of it, is very clearly pointed out by Justice Marcy, in the cause of Beach v. Fulton Bank, 2 Wen. Rep., 230. In England an appeal was not suspensive of fur-

ther proceedings in the cause ; a different practice, would almost have amounted to a denial of justice, by protracted and often repeated postponements and delays pending the appeal. This subject has always been controlled and regulated by statute in this state.

By the early statutes there were several modes of bringing a case from the chancery court into this court by appeal. From a final decree, appeal could be taken in term time, in open court.

2d. The party aggrieved, if he failed to take an appeal " at the time decree was pronounced," could, within one month thereafter, file a transcript of the record with the clerk of the supreme court, accompanied with a petition signed by the appellant, or some counsel of the court suggesting error, accompanied with bond, etc.

3d. The supreme court or some judge thereof in vacation, shall, for good cause shown, allow a petition of appeal, and if necessary, order a *supersedeas* at any time within three years after date of decree, the applicant for appeal complying with the terms which the court or judge may prescribe.

The act of 1837, it may be remarked, authorized any party to any judgment or decree rendered in any court in this state, to apply by petition, to the clerk of the court where the judgment was rendered for writ of error and *supersedeas*, which the clerk was bound to allow if the terms of the act were complied with. This act embraces both chancery and probate decrees, as well as judgments at law, and for the first time allowed the writ of error to remove into this court a chancery decree. The only statute prior to February, 1844, permitting appeals from interlocutory orders and decrees, is that of 27th November, 1821. Hutch. Code, section 37, p. 759. Allowing an appeal from an interlocutory order, either by the court or chancellor in vacation, at any time before final decree in the same manner and on same conditions as if final decree had been made; provided, such interlocutory decree orders money to be paid, or the possession or title of property

to be changed, or if the court or chancellor shall think the appeal proper, to settle the principles of the cause, or to avoid expense or delay. If the court or chancellor refuse the appeal, then the supreme court or any judge thereof, on petition, may award the same, etc.

Next comes the act of 24th February, 1844, permitting an appeal from an order overruling a demurrer to the bill without the demurrant being first compelled to answer. If the judgment overruling the demurrer be affirmed, the cause shall be remanded, to be proceeded in according to the practice of the court. Hutch. Code, 781. Thus stood the law on this subject until the revision of 1857. Art. 101 of Rev. Code, p. 555, is the act of 1844, just quoted.

Ordinarily, appeals must be applied for to, and granted by, the *court* whose proceedings are sought to be reviewed. Aside from statute, in no state of case could the clerk allow either appeal or writ of error. As to the time when the appeal must be taken under art. 101, of the Code, the words of the statute are, "when the demurrer is overruled." The appeal from such an order is suspensive. It may be allowed before the defendant is required to answer. If the chancellor is sustained by the appellate court, then the cause is remanded, to be proceeded in according to the practice of the court. There is no discretion to grant or disallow. Though the chancellor may think the demurrer to be frivolous, the defendant is entitled to his appeal. Demurrer to the bill puts the complainant's case, as he states it, to the test, whether he is entitled to the discovery and relief asked for, or to any relief whatever. And it was doubtless, in this aspect of it, that the legislature permitted the appeal before final decree. Art. 102 of the Code, which immediately follows, is a continuation, with slight change, of the statute of 1821, already quoted. This allows an appeal from a certain class of interlocutory orders, such as effect a change of the title or the possession of property, or the payment of money, etc., which may be granted by the court, or the judge in vacation, if applied for in twenty days after the date of

the decree complained of, and the court or judge shall deter-
mine whether the appeal shall operate as a *supersedeas* or
not.   Article 104 prescribes the bond for costs to be approved
by the clerk on an "appeal overruling a demurrer, or other
interlocutory orders when the court or judge shall not allow
a *supersedeas*."   This article seems especially, and perhaps
exclusively, to contemplate the appeal from the description
of orders and decrees mentioned in article 102.   The order
overruling a demurrer to a bill, is not named, but a liberal
reading of the article would include it in these words, "or
when the judge may think proper, in order to settle the
principles of the cause," or to avoid expense or delay.   Per-
haps the demurrer, more than any other pleading in a suit,
does bring into judgment the principles of the case, and a
decision upon it may avoid expense and delay.   If the court
or chancellor believes that the demurrer is of this character,
he may, and ought to grant the appeal, if he overrules it, if
applied for in proper time.   If, however, it be merely for
delay, or for some matter of form, which can be cured by
amendment, as where the complainant defectively states a
good case, then he ought not to allow it.

If this appeal cannot be sustained under some one of these
provisions of law, then the case is improperly in this court,
and we have no jurisdiction to consider of the order com-
plained of.   We have seen that it was not properly taken
under the art., 101, because not prayed and allowed by the
court when the order was made.    It is not taken under art.
102, because the application was not presented to the court,
or to the judge in vacation, nor allowed by the one or the
other.

There was exception taken by appellants, to the order of
the court, permitting the complainants to file the supplemen-
tal bill.   It is manifest this is not such an interlocutory order
as can be appealed from.   If error can be predicated of it at all,
it can only be when the cause is brought here, from the final
decree, which opens the whole case in this court for review.

In Stebbins v. Niles, 13 S. & M., 307, speaking of judgments

and decrees, as used in these statutes, the court say, the terms "judgments" and "decrees" mean final disposition of a cause, unless the meaning be restricted by appropriate technical language, and so we must have understood the legislature to have used them.

Brown v. Troop, 33 Miss. Rep., 37, sustains the construction we have put on the statutes. In that case it would appear that the appeal was granted by the court, when the demurrer was overruled. The court add, "the act of 1844, covers every case in which the demurrer is overruled, besides the statute of 1822, covers the case, if by the appeal the merits of the controversy may be settled. Let the motion be sustained and the appeal dismissed.